UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
IRWIN FRANCHISE CAPITAL CORPORATION,

                                                                         07 Civ. 3785 (WCC)

                       Plaintiff,

        -against-

WINDRAM ENTERPRISES, INC.,

                     Defendant.
------------------------------------------------------------------x

-----------------------------------------------------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## TO DISMISS AMENDED COUNTERCLAIMS

-----------------------------------------------------------------------------------------------------------

                                                 Paykin Mahan Rooney & Krieg LLP
                                                 *Attorneys for Plaintiff*
                                                 185 Madison Avenue, 10th Floor
                                                 New York, New York 10016
                                                 (212) 725-4423

# TABLE OF CONTENTS

|  | *Page* |
|---|---|
| Table of Authorities | 3 |
| Preliminary Statement | 4 |
| Statement of Facts | 8 |
| Argument | |
| Point I | |
| Defendant has failed to plead fraud with particularity | 8 |
| Point II | |
| The claim for negligent misrepresentation is without merit and fails to meet the requirement of particularity | 15 |
| Conclusion | 16 |

**TABLE OF AUTHORITIES**

Cases

*S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corporation*, 84 F.3d 629 (1996)    8

*Stanford Square, L.L.C. v. Nomura Asset Capital Corporation*, 228 F.Supp.2d 293, 301 (S.D.N.Y. 2002)    8

*Shields v. Cititrust Bancorp., Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994)    8, 12

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Companies, Inc.,* 75 F.3d 801 (2d Cir. 1995)    9

*J.P. Morgan Chase Bank v. Liberty Mutual Ins. Co.,* 233 F. Supp.2d 550, 553 (S.D.N.Y. 2002)    12

*VTech Holdings Ltd. v. Lucent Technologies, Inc.,* 172 F.Supp.2d 435 (S.D.N.Y. 2001)    12

*Grappo v. Alitalia Linee Aeree Italiane, S.p.A.,* 56 F.3d 427, 434 (2d Cir. 1995)    13

*Reserve Solutions, Inc. v. Vernaglia,* 438 F.Supp.2d 280, 288 (S.D.N.Y. 2006)    13

*GSGSB, Inc. v. New York Yankees,* 862 F.Supp. 1160, 1177 (S.D.N.Y. 1994)    13

*Graubard Mollen Dannett & Horowitz v. Moskowitz,* 86 N.Y.2d 112, 692 N.Y.S.2d 1009, 653 N.E.2d 1179 (1995)    13

*Champion Titanium Horseshoe, Inc. v. Wyman-Gordon Investment Castings, Inc.,* 925 F. Supp. 188, 190 (S.D.N.Y. 1996)    13

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 188 (2nd Cir. 2004)    15

*OSRecovery, Inc. v. One Groupe International, Inc.,* 354 F.Supp.2d 357, 379 (S.D.N.Y. 2005)    15

## PRELIMINARY STATEMENT

Plaintiff is a lender that issued a commitment letter to the defendant for financing for 14 Kentucky Fried Chicken restaurants owned by the defendant. Defendant then terminated the commitment letter because it found other financing, and refused to pay the balance of the commitment fees or expenses that were reimbursable under the terms of the commitment. Plaintiff commenced this action, seeking to recover the balance of the commitment fee, and its reimbursable expenses, including title searches, environmental inspections, and similar items that are customary in a commercial mortgage loan transaction.

In its amended answer ("Amended Answer") defendant has asserted two counterclaims for fraud and a third for negligent misrepresentation. Each of these counterclaims alleges in bald, conclusory terms that the plaintiff misrepresented that it had knowledge and experience in financing for franchise operators, and that the plaintiff misrepresented its intentions to perform. The counterclaims fail utterly to state a claim with particularity as required by Rule 9 (b) of the Federal Rules of Civil Procedure, are contradicted by the Answer and its exhibits, and should be dismissed.

**STATEMENT OF FACTS**

Plaintiff Irwin Franchise Capital Corp. ("IFCC") is a lender, and makes loans to franchise operators. On December 20, 2006, IFCC sent defendant Windram Enterprises ("Windram") a written loan proposal to refinance the debt of 14 Kentucky Fried Chicken franchises owned by Windram ("Proposal")(Exhibit C). Windram accepted the Proposal by countersigning it on December 22, 2006.

On January 22, 2007, in an effort to start the loan process, IFCC sent Windram a letter for Windram's signature wherein Windram would agree to pay for expenses in connection with the loan processing (Exhibit D to the Amended Answer). The letter states that "to shorten the processing time, IFCC can begin processing procedures upon receipt of the proposal fee as outlined in the said Proposal Letter, prior to approval." Contrary to what Windram claims, IFCC was never obligated to commence the documentation process before the issuance of a commitment.

Nevertheless, IFCC began working on the documentation process promptly. This is admitted in the exhibits to the Amended Answer: by January 30, 2007 Charles Fletcher of IFCC was already sending Windram e-mails chasing down the lease documentation. *See* Exhibit E to the Amended Answer.

On February 8, 2007, IFCC forwarded Windram a commitment letter ("Initial Commitment Letter")(Exhibit D). Windram made several unilateral changes to the Initial

Commitment Letter and then countersigned it and returned it to IFCC. Windram rejected the unilateral changes made by Windram, and on February 9, 2007, sent a new commitment letter which stated in no uncertain terms that it superseded the Initial Commitment Letter ("Final Commitment Letter")(Exhibit E to the Amended Answer). The Final Commitment Letter stated, among other things, "The closing shall be no later than April 30, 2007, however, Borrower and Irwin will use best efforts to close by March 31, 2007." On February 9, 2007, Windram accepted the revised terms and executed the Final Commitment Letter.

The Final Commitment Letter required, among other things, for Windram to pay IFCC: (a) a non-refundable commitment fee of $92,000 ("Commitment Fee") payable in three installments; and (b) its out-of-pocket expenses incurred in preparation for the transaction contemplated by the Final Commitment Letter in the event the transaction failed to close.

Contrary to Windram's claims, IFCC kept working on the documentation process, and circulated a due diligence checklist on February 16, 2007 (Exhibit I to the Amended Answer). Significantly, despite Windram's claims that IFCC had no intention of starting the loan documentation process, by February 16, 2007 Windram still had not supplied IFCC with three of the leases.

In reality, Windram was shopping the loan to other lenders instead of taking care of its due diligence issues with IFCC. On March 7, 2007, Windram sent IFCC formal

notice that it was terminating its financing relationship with IFCC ("Termination Notice")(Exhibit F). The Termination Notice claimed that the termination was being made because IFCC allegedly could not close by March 25, 2007, and (what is probably the real reason) because another lender had made a better offer. Prior to such termination, IFCC incurred $57,620.89 in out-of-pocket expenses on behalf of Windram, consisting of $5,570 to First American Title Insurance Company, $9,905.50 to Ivey Barnum & O'Mara, $21,600 to The Matthews Company, $14,390 to National Appraisal Associates, $1,800 to Environmental Data Resources, Inc., $162 to FIS Flood Services; and $5,193.30 to UCC Direct.

IFCC demanded payment of the balance of the commitment fee and the out-of-pocket expenses, and Windram refused to pay. IFCC then commenced this action. Windram answered and asserted counterclaims. In response to IFCC's motion to dismiss, Windram served the Amended Answer. IFCC withdrew its pending motion to dismiss, and now moves to dismiss the three counterclaims alleged in the Amended Answer.

**ARGUMENT**

As set forth more fully below, defendant's counterclaims sounding in fraud must be dismissed because they are not pleaded with the requisite particularity required by the Federal Rules of Civil Procedure. In addition, defendant's counterclaims for negligence must be dismissed because there was no fiduciary relationship between plaintiff and defendant, and such claim also is not pleaded with the requisite particularity required by the Federal Rules of Civil Procedure.

**POINT I**
**DEFENDANT HAS FAILED TO PLEAD FRAUD WITH PARTICULARITY**

Rule 9 of the Federal Rules of Civil Procedure requires all claims sounding in fraud, negligence and breach of the implied covenant and good faith and fair dealing to be pleaded with particularity. As set forth more fully below, defendant has woefully failed to meet such standard, and therefore its counterclaims must be dismissed. This requires the pleading of facts, not merely conclusory allegations. *S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corporation*, 84 F.3d 629 (1996); *Stanford Square, L.L.C. v. Nomura Asset Capital Corporation*, 228 F.Supp.2d 293, 301 (S.D.N.Y. 2002).

The Second Circuit has held that Rule 9 (b) requires a party to plead facts that give rise to a strong inference of fraudulent intent, either by alleging facts to show both motive and intent or by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Shields v. Cititrust Bancorp., Inc.,* 25 F.3d 1124,

1128 (2d Cir. 1994); *San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Companies, Inc.,* 75 F.3d 801 (2d Cir. 1995); *S.Q.K.F.C, supra.*

The original Answer made only the conclusory assertion that IFCC had no intention of closing within the time period required by Windram, without setting forth any facts to support the claim. The Amended Answer alleges two types of misrepresentations, on which Windram claims to have relied. The first is that IFCC claimed to have unique and specialized expertise in franchise financing transactions (Answer, par. 9). The other is that the letter dated January 22, 2007 misrepresented that IFCC would start the complicated process of preparing loan documentation and due diligence before the issuance of a commitment. These allegations do not meet the requirements of Rule 9 (b) because there is no showing of falsity.

The Second Circuit has held that Rule 9 (b) requires that the plaintiff must allege facts sufficient to demonstrate how the alleged misrepresentations were false. *San Leandro, supra,* at 812. Windram has failed to do so for either alleged misrepresentation. No facts whatsoever are alleged to support Windram's claim that IFCC misrepresented that it had extensive experience in financing transactions for franchise operators. In fact, Windram, in its counterclaim, admits that IFCC had extensive experience in such transactions (Amended Answer, pars. 35-36). This admission contradicts one of the purported misrepresentations - - that IFCC claimed to have unique and specialized expertise in franchise financing transactions. Windram also never stated how it supposedly relied on IFCC's claims of experience, or how that caused it detriment.

9

In fact, Windram's claim about professed expertise seems to have been stated and then simply abandoned. The real basis for Windram's claim is its allegation that it relied on the alleged representation in the January 22, 2007 letter (Exhibit D to the Amended Answer) that IFCC would start the documentation and due diligence process before the issuance of a commitment (Answer, pas. 17 and 47). Windram has not alleged facts sufficient to plead either the falsity of this statement or its own reliance to its detriment.

In the first place, the January 22, 2007 letter states only that IFCC "*can begin* processing procedures upon receipt of the proposal fee [emphasis added]." IFCC never made an undertaking to do so, but only suggested it as an accommodation to Windram, which IFCC had no contractual obligation to do. The allegation is also belied by the exhibits to the Amended Answer.

Exhibit E to the Amended Answer consists of a series of e-mails between Charles Fletcher of IFCC and John Klarl, the attorney for Windram. The earliest e-mail (January 30, 2007) from Fletcher to Klarl refers to a conversation on the previous Friday (January 26, 2007) in which Fletcher asked Klarl to get him the ground leases so Windram could start its due diligence. On February 2, 2007 Fletcher sent another e-mail telling Klarl that two ground leases were still missing, and inquiring when they were going to be sent. *See* Exhibit E to the Amended Answer. In fact, when the due diligence checklist (Exhibit I to the Amended Answer) was circulated on February 16, 2007, Windram still had not provided three of the ground leases.

The real crux of the counterclaim is that the leasehold mortgages required landlord consents, a time-consuming process (Answer, par. 40). Windram alleges that by the time the commitment was signed on February 8, 2007, there was insufficient time to obtain the landlord consents before the March 31, 2007 deadline (Amended Answer, par. 47). Windram also alleges that as of March 5, 2007, IFCC had not contacted any of the landlords to obtain the consents (Amended Answer, par. 62). This does not meet the burden either of alleging the falsity of the representations or of alleging causation of damages.

When the draft of the landlord consents was circulated on February 16, 2007, the closing was still one month away. Windram alleges that this was an inadequate amount of time in conclusory terms, without stating any facts to demonstrate why it was impossible. Commercial ground leases of the type at issue here customarily provide that the landlord will execute and deliver its consent to financing within a certain number of days. Windram has failed to allege why it would have been impossible for it to have exercised its right under its leases to demand that its landlords execute and deliver a the consents within the time period required to close the loan. Windram has not alleged this for the simple reason that it is *untrue on the face of the counterclaim.* The Amended Answer alleges in one place that IFCC's failure to deliver the draft of landlord consents until February 16, 2007 made it impossible to obtain such consents within the time period required to close the loan. But the Amended Answer then alleges (pars. 62-65), that on March 5, 2007, Windram decided that it could not close the deal with IFCC and that it

had decided to seek financing from another lender, which it did within the required time. If Windram was able to close so quickly with a new lender, it presumably had the ability to do so with IFCC.

What really happened here is that Windram decided to shop the loan to another lender, and manufactured a dispute with IFCC by claiming that as of March 5, 2007, IFCC had not contacted Windram's landlords. In fact, IFCC had no responsibility to do so: obtaining landlord consents is the responsibility of the borrower, not of the lender. The allegation that it was impossible to close the financing by the end of March is untrue on the face of the Amended Answer, which alleges that Windram's new lender (*after* the March 7, 2007 termination) was able to do so.

In *Shields* the Second Circuit held that claims of fraud cannot be pled with "speculation and conclusory allegations." *Shields* at 1128. The counterclaims here are exactly the type of speculation and conclusory allegations that are barred by Rule 9 (b). There is no showing of facts to demonstrate that the representations were false, that the representations caused the alleged damage to Windram, or even that a representation was made in the first place. The claim for fraud should be dismissed.

Moreover, the alleged fraud is really a promise of future performance, which does not state a claim for fraud. Allegations that a party does not have the intent to perform a contract do not state a claim for fraud. *J.P. Morgan Chase Bank v. Liberty Mutual Ins. Co.,* 233 F. Supp.2d 550, 553 (S.D.N.Y. 2002), citing *VTech Holdings Ltd. v. Lucent*

*Technologies, Inc.,* 172 F.Supp.2d 435 (S.D.N.Y. 2001). Defendant attempts to plead around this by alleging that IFCC knew at the time that the commitment letter was issued that it could not close on the required date. The Courts have held that an action for breach of contract cannot be converted into a claim for fraud merely by alleging that the contracting party did not intend to meet its obligations. *Grappo v. Alitalia Linee Aeree Italiane, S.p.A.,* 56 F.3d 427, 434 (2d Cir. 1995); *Reserve Solutions, Inc. v. Vernaglia,* 438 F.Supp.2d 280, 288 (S.D.N.Y. 2006); *GSGSB, Inc. v. New York Yankees,* 862 F.Supp. 1160, 1177 (S.D.N.Y. 1994).

A cause of action may arise for misrepresentations of future performance when a specific misrepresentation has been alleged, with facts to demonstrate why it was false at the time it was made. *Graubard Mollen Dannett & Horowitz v. Moskowitz,* 86 N.Y.2d 112, 692 N.Y.S.2d 1009, 653 N.E.2d 1179 (1995). However, when there is no attempt to plead facts demonstrating that the representations were false when made, apart from the bare, conclusory assertion, the claim fails to meet the requirements of Rule 9 (b), notwithstanding the rule of *Graubard*. *Champion Titanium Horseshoe, Inc. v. Wyman-Gordon Investment Castings, Inc.,* 925 F. Supp. 188, 190 (S.D.N.Y. 1996). No facts whatsoever have been alleged that would support an inference that plaintiff did not intend to perform its obligations.

The Second Circuit has held that the purpose of Rule 9 (b) is to provide the accused party with fair notice of the claim, to protect that party's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit. *Shields, supra,* at 1128. The present counterclaims are a perfect example of

what the rule is intended to prevent.  In this fairly straightforward case for breach of contract, defendant has made counterclaims for fraud by the bare allegation that the plaintiff did not intend to perform its obligations, with no facts to support the allegation.  The counterclaims were interposed solely to delay and complicate what is really an action for breach of contract, are without merit, and fail to meet the requirements of Rule 9 (b).

      The first and second counterclaims fail to state a claim with particularity, as required by Rule 9 (b) and therefore should be dismissed.

## POINT II
### THE CLAIM FOR NEGLIGENT MISREPRESENTATION IS WITHOUT MERIT AND FAILS TO MEET THE REQUIREMENT OF PARTICULARITY

Defendant has failed to properly plead a claim for negligent misrepresentation. Negligent misrepresentation requires that there must be a fiduciary relationship between the parties and the relationship of lender/borrower does not satisfy such test. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 188 (2nd Cir. 2004). As a result of the foregoing, defendant's counterclaim for negligent misrepresentation must be dismissed.

Even assuming arguendo, that there was a fiduciary relationship between the parties, defendant's counterclaim for negligent misrepresentation must be dismissed because it is not alleged with particularity. The Courts have held that when a claim for negligent misrepresentation sounds in fraud (which is clearly the case here), it is subject to the particularity requirements of Rule 9 (b). *OSRecovery, Inc. v. One Groupe International, Inc.*, 354 F.Supp.2d 357, 379 (S.D.N.Y. 2005).

The claim for negligent misrepresentation is based on the same conclusory allegations made in support of the claims for fraud. In addition to not pleading a claim of fraud, the allegations likewise do not support a claim sounding in negligent misrepresentation. A review of the counterclaims will reveal not even one single allegation of negligence. Likewise, defendant has not even alleged that there is any type of fiduciary relationship between the parties, let alone alleged any facts that would establish a fiduciary relationship. As a result of the foregoing, defendant's counterclaim for negligent misrepresentation must be dismissed.

## CONCLUSION

For the reasons set forth above, the Court should dismiss the first, second and third counterclaims pursuant to Rule 9 (b) of the Federal Rules of Civil Procedure, together with such further and different relief as the Court may deem just and proper.

Dated: New York, New York
      November 13, 2007

                    Respectfully submitted,

                    Paykin Mahon Rooney & Krieg, LLP

            By: _____s/_____
                    Joseph N. Paykin, Esq.- JP (3410)
                    Attorneys for Plaintiff
                    185 Madison Avenue
                    New York, New York 10016
                    (212) 725-4423